FILED
SUPERIOR COURT
OF GUAM

2024 JAN 25 PH 3: 29

CLERK OF COURT

BY:

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MARIANA STONES CORPORATION, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> FADIAN DEVELOPMENT, INC. AND DOES 1-10, <br><br> Defendant. | CIVIL CASE NO. **CV1307-19** <br><br> **DECISION AND ORDER** |

## INTRODUCTION

This matter is before the Honorable Vernon P. Perez on Plaintiff Mariana Stones Corporation, Ltd.'s ("MSC") Motion for Summary Judgment. MSC is represented by the Law Offices of Jacques C. Bronze and the Law Office of Edward C. Han. Defendant Fadian Development, Inc. ("Fadian") is represented by the Law Offices of Louie J. Yanza. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

This matter stems from an Agreement entered into by MSC and Fadian on July 31, 2015 for the clearing, levelling, and grading of Tract 157NEW ("the Property"). (Am. Compl. ¶¶ 6-8, Oct. 20, 2020). On December 30, 2015, Fadian's Board of Directors signed a resolution transferring all of the corporation's assets to B&K, Development, LLC ("B&K"). (Am. Compl. Ex. 2). Fadian subsequently conveyed to B&K 33 parcels of real property through a Quitclaim

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 1 of 48

Deed in March 2016. (Am. Compl. Ex. 4). On March 24, 2016, MSC executed a First Amendment to the Agreement ("First Amendment") in which Fadian conveyed, assigned, transferred and set over to B&K all of Fadian's rights and obligations under the Agreement and B&K assumed and agreed to perform all of Fadian's obligations under the Agreement. (Am. Compl. Ex. 3).

On October 20, 2020, MSC filed its Amended Complaint,[1] asserting three causes of action against Fadian: (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; and (3) Fraudulent Inducement. *See generally*, Am. Compl., Oct. 20, 2020. The claims against B&K were dismissed without prejudice pursuant to a Stipulation. *See* Stip. for Dismissal without Prejudice, Aug. 4, 2021. MSC seeks compensatory damages reflecting out-of-pocket losses in the sum of $1,835,552.63, plus pre-judgment interest, punitive damages in an amount to be proven at trial, costs, and any other relief that the Court considers just and proper. (Am. Compl. at 27). On November 25, 2022, Fadian moved to dismiss the Amended Complaint, which was denied by the Court. *See* Dec. & Order, May 20, 2021.

On June 10, 2021, Fadian filed its Answer to the Amended Complaint, setting forth thirty-six affirmative defenses. *See* Ans. at 3-4, Jun. 10, 2021. Fadian subsequently withdrew and dismissed affirmative defenses numbered 22, 28, 31, 32, 35 and 36 with prejudice. *See* Stip. & Order, Mar. 9, 2023.

On July 11, 2022, the parties stipulated to the admission of depositions taken in CV0452-16, namely, that of Myung Mok Bae, Kei Za Ryu Bae, and Su Heon Kim. *See* Stip. & Order for Admission of Depositions Take in Prior Action, Jul. 11, 2022.

On April 17, 2023, MSC filed the instant motion. On May 31, 2023, Fadian filed its Opposition. In its Opposition, Fadian also indicated it would not continue to argue affirmative defenses 6, 9, 12, 14, 15, and 16. (Opp'n at 14 & 16, May 31, 2023). On June 26, 2023, MSC

---

[1] MSC's initial Complaint against Fadian and B&K was filed on November 18, 2019. MSC asserted three causes of action: (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; and (3) Cancellation of Assignment. *See* Compl., Nov. 18, 2019. The Court granted Fadian's Motion to Dismiss, finding MSC had insufficiently plead its causes of action for intentional misrepresentation and negligent misrepresentation. (Dec. & Order, Sept. 18, 2020). The Court, however, gave MSC leave to file an Amended Complaint. *Id.*

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 2 of 48

filed its Reply. The Court subsequently placed the matter under advisement without further argument.

**DISCUSSION**

## I. Summary Judgment Standard

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Guam R. Civ. P. Rule 56(a) (2022). A genuine issue exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Izuka Corp. v. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7. The factual dispute must concern a material fact. *Id.* "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "[T]he Court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Financial Corp.*, 2007 Guam 27 ¶ 7.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Guam R. Civ. P. Rule 56(c)(1) (2022). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cnty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Here, MSC moves for summary judgment in its favor on all three counts alleged against Fadian and on all of Fadian's affirmative defenses. *See generally*, Mot. Summ. J., Apr. 17, 2023. Fadian "agrees with the vast majority of facts as stated" by MSC but sets forth that there is a "hardline factual dispute over 1) Myung Mok Bae's (Bae) mental state when he attempted to transfer all of Fadian's assets to B&K (hereinafter "Transfer") and subsequent agreement for MSC to process stone on Fadian property (hereinafter "Agreement"); 2) So-Heon [sic] Kim's

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 3 of 48

(Kim) agency to MSC as their CEO and 3) the benefits MSC received after agreeing to the assignment in the First Amendment to the Agreement." (Opp'n at 2).

**II. Undisputed Facts**

The Court's review of the record indicates the following undisputed facts:

1. I Cheol Lee was a director of MSC between 2011 and June 2019. (I Cheol Lee Decl. ¶ 2, Apr. 17, 2023). I Cheol Lee has been the principal shareholder of Springwave Co. Ltd., the controlling shareholder of MSC. *Id.*

2. Prior to July 31, 2015, I Cheol Lee instructed then MSC President and CEO Paul (Chan Koo) Lee ("Paul Lee") to meet with Myung Mok Bae ("Bae") to negotiate an agreement for grading, removing, and mining aggregate from a parcel of property. *Id.* at ¶ 3.

3. I Cheol Lee and Paul Lee orally agreed to the terms of the agreement with Bae, subject to a written agreement eventually executed on July 31, 2015. *Id.* at ¶ 5.

4. The July 31, 2015 Agreement ("the Agreement") was executed by Fadian's Chairman, Bae, Paul Lee, and witness Su Heon Kim ("Kim") and effective as of August 1, 2015. (Am. Compl. Ex. 1).

5. Paul Lee later stepped down to become the corporate secretary for MSC until he resigned from the company on or about October 31, 2016. (I Cheol Lee Decl. ¶ 4).

6. Pursuant to Section 4 of the Agreement MSC was required to do the following:

   a. MSC will pay Fifty Thousand Dollars ($50,000.00) hereinafter referred to as "Advance Royalty Payment" for the said property to FDI if and only when the FDI receives a permit from EPA.

   b. Thereafter, on a monthly basis, MSC will deposit US One Dollar Fifty Cents ($1.50) per every Cubic Yard of actually sold in the aggregate to the banking account specified by FDI. One Dollar Fifty Cents ($1.50) will be comprised of fifty cents ($0.50) which will be ROYALTY only to FDI and One Dollar ($1.00) which will constitute funds borrowed by FDI from MSC to be used for FDI's development marketing plan purpose. The above-mentioned One Dollar ($1.00) should be paid back lump sum payment to MSC every One Dollar ($1.00) per Cubic Yard of actually sold amount of

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 4 of 48

aggregate after this Agreement (as extended) completed without accrual of any interest.

c. MSC will pay Three Thousand Dollars ($3,000) as a Consulting Fee to FDI's Mrs. Sandra Pablo during the term of this Agreement (as extended).

d. MSC will pay for all costs reasonably related to obtaining EPA Permit, land development and engineering & environmental study with respect to EPA document preparation before the beginning of its service.

e. MSC will start working within three (3) months after receiving Clearing, Leveling & Grading permit for the said Property. MSC will bring in heavy equipment and crusher facilities in the said Property, and FDI hereby agrees to have such equipment and facilities be brought on the premises of the said Property.

(Am. Compl. Ex. 1).

7. The Consulting Agreement was signed by Kim as MSC President/CEO and Fadian's President Sandra Pablo on August 3, 2015. (Brown Decl. Ex. 11, May 31, 2023).

8. "MSC proceeded to purchase a sand wash plant unit specifically for this Project and brought it to the Property to produce the aggregate agreed under the Agreement." (I Cheol Lee Decl. ¶ 7). *See also* MSC Decl. ¶ 5. "In accordance with the Agreement, MSC sought and obtained approval of a Mass Grading Permit from the Department of Public Works (DPW) which cost MSC approximately two-hundred-fifty thousand dollars ($250,000) in order to obtain such permit." (MSC Decl. ¶ 6, Apr. 17, 2023).

9. On December 30, 2015, the Board of Directors of Fadian signed a resolution which stated that "upon receiving the requisite approval of the majority of shareholders of the Corporation in accordance with the Corporation's Bylaws, Corporation shall transfer all of its assets to B&K Development, LLC and thereafter be dissolved." (Am. Compl. Ex. 2).

10. The Resolution further stated that "upon receiving the requisite approval the majority of shareholders of the Corporation in accordance with the Corporation's Bylaws, Corporation shall transfer all of its assets to B&K Development, LLC and thereafter be dissolved." *Id.*

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 5 of 48

11. On January 14, 2016, B&K submitted an application for a certificate of registration of a foreign limited liability company on Guam to the Department of Revenue and Taxation. (Bronze Decl. Ex. M). The application was signed by Su Heon Kim as Managing Member of B&K. *Id.* The members of B&K included Kim, Kei Za Ryu, and Myung Mok Bae. *Id.*

12. Fadian conveyed to B&K 33 parcels of real property through a Quitclaim Deed dated March 3, 2016 and recorded March 4, 2016. (Am. Compl. Ex. 4).

13. On March 24, 2016, MSC's Corporate Secretary Paul Lee contacted MSC Director I Cheol Lee to tell him that Bae contacted him by phone informing him that Fadian had a shareholder meeting of all the shareholders of Fadian and received the requisite approval from all the Board of Directors and all the shareholders of Fadian and prepared all necessary documentation to effect an assignment of the Agreement. (I Cheol Lee Decl. ¶ 8).

14. Bae wanted to meet up with Paul Lee that day to execute the assignment of the Agreement. *Id.*

15. I Cheol Lee instructed Paul Lee to meet with Bae and execute the assignment so long as Bae provided the corporate authorization permitting the assignment of the Agreement. *Id.*

16. After the meeting between Bae and Paul Lee, Paul Lee provided I Cheol Lee a copy of a signed original Board of Directors resolution of Fadian dated December 30, 2015. *Id.* at ¶ 9. *See also* MSC Decl. ¶ 7.

17. The First Amendment to the Agreement ("First Amendment") was executed by Bae as Chairman of Fadian, Paul Lee as Corporate Secretary of MSC, and Kim as Managing Member of B&K Development. (Am. Compl. Ex. 3). In the First Amendment, Fadian conveyed, assigned, transferred and set over to B&K all of Fadian's rights and obligations under the Agreement and B&K assumed and agreed to perform all of Fadian's obligations under the Agreement. *Id.*

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 6 of 48

18. Relying on the terms of the assigned Agreement, MSC continued to perform its obligations under the Agreement. (I Cheol Lee Decl. ¶ 13).

19. On May 26, 2016, Delle Swegler Nadler, Moana Swegler Luka and Mark Swegler (collectively, "the Sweglers") filed a lawsuit against Mr. Bae, Kei Za Ryu Bae, B&K and Fadian in Superior Court of Guam Civil Case No. CV0452-16. (Am. Compl. Ex. 4). The Sweglers' father, Delbert Swegler, owned 80,000 shares of common stock of Fadian. *Id.* at ¶ 12. Mr. Swegler was also a director of Fadian and passed away on July 24, 2012. *Id.*

20. The lawsuit "alleged that Fadian's Board of Director's execution of the quitclaim deed transferring and conveying to B&K Development, LLC, 33 parcels of real property, including Tract 157NEW, which is the subject of the Agreement between MSC and Fadian was illegal and should be cancelled in light of Fadian's shareholders failure to comply with Article 19 of the 4th Amended Articles of Incorporation of Fadian." (Am. Compl. ¶ 21; Ex. 4).

21. MSC moved to intervene in the Swegler lawsuit, which was granted by the court on June 2, 2017. (Am. Compl. ¶¶ 23-24). *See also* MSC Decl. ¶ 9 ("On or about the middle of March 2017, MSC became aware of the filing of the verified complaint by the Sweglers against Fadian, and on April 7, 2017, MSC filed its complaint in intervention in CV0452-16."). On September 15, 2017, MSC was ordered by the court in the Swegler lawsuit "to cease all work on the Property and MSC suspended further work under the Agreement and began the process of demobilization and closure of operations being performed on the property." (Am. Compl. ¶ 33). *See also* MSC Decl. ¶ 10.

22. On November 4, 2019, the court in the Swegler lawsuit declared the Quitclaim Deed purporting to convey the Fadian Property to B&K null and void, ordered the Quitclaim Deed cancelled and title quieted in favor of Fadian, and found that "Defendants Bae and Ryu breached their fiduciary duties to Fadian by transferring the Fadian Property

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 7 of 48

to B&K, as well as aided and abetted each other's breach of their fiduciary duties." (Bronze Decl. Ex. F (CV0452-16 Dec. & Order at 15), Apr. 17, 2023).

23. Bae testified in the Swegler lawsuit that he did not notice a meeting for shareholders to discuss transferring Fadian's assets to B&K. (Am. Compl. Ex. 7 (Bae Depo. Transcript 255: 13-24, May 24, 2017); Brown Decl. Ex. 7 (Bae Depo. Transcript 240: 7-9, May 24, 2017), May 31, 2023).

24. Fadian admits in discovery "that the notice requirements of the By-laws of Fadian had not been complied with before the Fadian's directors executed the December 2015 resolution" and that "Fadian did not notice[] a meeting of the shareholders to vote on the asset transfers out of Fadian, which included the Property subject to the Agreement." (Bronze Decl. Ex. D (Deft. Resp. to Plt. First Req. for Admissions at 2-3, Mar. 25, 2022), Apr. 17, 2023).

25. Fadian also admits in discovery that "Fadian through Bae knew prior to March 24, 2016, that Delbert Sewgler owned 80,000 shares of common stock in Fadian, amounting to about 40% of the outstanding common stock, was also a director of Fadian, and that Delbert Sewgler, had died since July 14, 2012). (Bronze Decl. Ex. D at 2).

## III. Intentional Misrepresentation

MSC's first cause of action against Fadian alleges intentional misrepresentation. (Am. Compl. ¶¶ 34-49). The elements of intentional misrepresentation are: "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Hemlani v. Flaherty*, 2003 Guam 17 ¶ 9 (same elements as fraud) (citation omitted).

### A. Misrepresentation

The first element MSC must prove is that there was a misrepresentation. *Hemlani*, 2003 Guam 17 ¶ 9. This element "is satisfied by a failure to fully disclose material facts." *Berry v. Frazier*, 307 Cal. Rptr. 3d 778, 789 (Cal. Ct. App. 2023), *as modified on denial of reh'g* (May 15, 2023), *review denied* (Aug. 9, 2023). "MSC asserts that Bae knew that his "oral representations

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 8 of 48

to Paul on March 24, 2016, that he has had an opportunity to have a meeting with and the approval of the shareholders and had received the approval of the board of directors and shareholders of Fadian relating to the Assignment of the Agreement" were false. (Mot. Summ. J. at 10). MSC also asserts that the statement in the Resolution that Fadian had "the requisite approval of the majority of shareholders of the corporation in accordance with the corporation's Bylaws" was "a misrepresentation of an existing material fact." *Id.* at 11.

Fadian's by-laws[2] provide in relevant part:

## ARTICLE II – STOCKHOLDER'S MEETINGS

Section 2. Special meetings of the stockholders may be called at the principal office of the company at any time by resolution of the Board of Directors or by order of the President and must be called upon written request of stockholders registered as the owners of one-third of the total outstanding stock.

Section 3. Notice of meeting written or printed for every regular or special meeting of the stockholders shall be prepared and mailed to the registered post office address of each stockholder not less than ten (10) days prior to the date set for such meeting, and if for a special meeting, such notice shall state the objects of the same. No failure or irregularity of notice of any meeting shall invalidate such meeting at which all the shareholders are present and voting without protest.

Section 4. A quorum at any meeting of the stockholders shall consist of a majority of the voting stock of the company represented in person or by proxy, and a majority of such quorum shall decide any question that may come before the meeting.

(Bronze Decl. Ex. A). Article 19 of Fadian's Fourth Amended Articles of Incorporation also provides in relevant part that "[a]ny other provisions of the Articles and Bylaws not withstanding, a two-thirds vote of the shareholders will be required to accomplish . . . [t]he sale or encumbrance of significant assets of the corporation." *Id.*

---

[2] Fadian was formerly known as Jang Bok Developing Company, Ltd. Three amendments were made to Fadian's By Laws in 1990. The Amended By Laws further set forth that "[a]ll the other articles contained in the Original By Laws of Fadian Development, Inc., as filed in the Department of Revenue and Taxation, Government of Guam, on August 11, 1989, shall remain the same." (Brown Decl. Ex. 2). The August 11, 1989 By Laws are the By-Laws of Jang Bok Developing Company, Ltd. *See* Opp'n at 3 ("Fadian's By-laws are actually Jang Bok's By-Laws. . ."). *See also,* Bronze Decl. Ex. A; Brown Decl. Ex. 3.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 9 of 48

Bae testified in the Swegler lawsuit that he did not notice a meeting for shareholders to discuss transferring Fadian's assets to B&K. (Am. Compl. Ex. 7 (Bae Depo. Transcript 255: 13-25, May 24, 2017)). Fadian admitted in discovery "that the notice requirements of the By-laws of Fadian had not been complied with before the Fadian's directors executed the December 2015 resolution" and that "Fadian did not notice[] a meeting of the shareholders to vote on the asset transfers out of Fadian, which included the Property subject to the Agreement." (Bronze Decl. Ex. D at 2-3). Thus, the Court finds that there is no dispute of material fact as to the first element and MSC has shown there was a misrepresentation of material fact.

**B. Knowledge of Falsity**

The second element MSC must prove is knowledge of falsity (or scienter). *Hemlani,* 2003 Guam 17 ¶ 9. MSC argues that it is undisputed "that Fadian through Bae knew the representations to MSC orally, on March 24, 2016, and in the December 30, 2015 Fadian Board of Directors resolution were in fact false and as to that element of Fadian's claim, summary judgment should be granted." (Mot. Summ. J. at 15). Fadian argues in opposition that "Bae did not have the *mens rea* required." (Opp'n at 7).

"A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." Restatement (Second) of Torts § 526 (1977). Bae testified in the Swegler lawsuit to the following:

Q: Did you ever tell Mariana Stones that you were authorized by the shareholders to act on behalf of the company?

A: No. Nothing to do with Fadian.

Q: To your knowledge, was Mariana Stones aware that there were at least three shareholders of the company? You, your wife, and Mrs. Pablo?

A: I don't know. I, I - - I didn't want to explain to them, you know. Just I was representing Fadian.

Q: Did they ever ask you?

A: No.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page **10** of 48

(Am. Compl. Ex. 6 (Bae Depo. Transcript 232: 11-23, May 24, 2017)). Bae further testified:

Q: And because you thought that they were not going to consent to the sale of this property, you decided to just not tell them about it; correct?

A: Yeah. Right.

\* \* \*

Q: Mr. Bae, we talked about how corporations can issue written notices to the shareholders for a shareholder meeting; correct?

A: Yes.

Q. And you didn't do that?

A: I didn't do that.

Q: And there was no vote by the shareholders regarding this transfer of substantially all the assets of the corporation; correct?

A: Yes.

(Am. Compl. Ex. 7 (Bae Depo. Transcript 255: 1 – 5; 13-25, May 24, 2017)). The Court finds that in light of this deposition testimony, Fadian, through Bae, knew the representations he made to MSC were false.

**C. Intent**

The third element MSC must prove is intent – that the misrepresentation was made with the intent to defraud to induce reliance on the misrepresentation. *Hemlani,* 2003 Guam 17 ¶ 9. Here, MSC argues that "there was no reason for Fadian to misrepresent to MSC that it had adopted the phony December 30, 2015 resolution and take the other actions needed to transfer the Property and the Agreement to B&K except to induce MSC to execute the First Amendment to the Agreement with Fadian so that the Property which was the subject of the Agreement and the obligations of MSC under the Agreement could be assigned to B&K." (Mot. Summ. J. at 16-17). Fadian opposes, arguing that Bae could not have the intent to defraud to induce reliance because he thought he was acting appropriately under the corporation's by-laws and because "Kim admitted that Bae disclosed the issues of Swegler's missing heirs to him when he was an agent of MSC." (Opp'n at 7). Fadian additionally sets forth that if "the Court does find no dispute of

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 11 of 48

material fact for any of MSC's claims, the agency of Kim and his involvement gives MSC unclean hands and the matter should be judged in favor of Fadian as no party can prevail." *Id.* at 12.

### i. Fadian's By-Laws and Articles of Incorporation

The Court first turns to the argument that Bae thought he was acting appropriately under the corporation's by-laws. The Court acknowledges that on October 19, 2014, Myung Bok Bae, Seoung Ho Chang, Keiza Ryu Bae, and Sandra Mae Pablo executed a document entitled "Unanimous Consent of Living Board of Directors and Shareholders." (Brown Decl., Ex. 4). The resolution acknowledged the deaths of Delbert Swegler and Dometro Pablo and set forth that "[i]t is the company's understanding that the Estate of Pablo and the Estate of Swegler are either in active probate proceedings or have yet to commence. Accordingly, the Corporation shall cooperate with the probate proceeding." *Id.* The resolution also set forth that "[i]n order for the corporation to continue to operate and recognizing that the shareholders controlling 49% are now deceased that the bylaws permit majority action, it was resolved that until the probate cases of the aforementioned shareholders is complete, such action shall continue other than those expressly prohibited by law." *Id.* In light of this, Bae was clearly aware that Mr. Swegler owned shares of common stock in Fadian and had passed away.[3]

Bae testified in the Swegler lawsuit that the four directors who signed the resolution "honored [his] decision, so they follow it without any discussion" even though they were not the only shareholders at the time. (Brown Decl. Ex. 7 (Bae Depo. Transcript 240: 1-6, May 24, 2017)). Bae further testified that he did not notice a meeting for shareholders to discuss the asset transfer because he did not think they would agree to the transfer of property, *see* Am. Compl. Ex. 7 (Bae Depo. Transcript 255: 1-5, May 24, 2017), and that:

> [M]ajority can decide. You read that. Majority can decide anything. Because I understood keeping company long time, 10 years, 20 years, dormant like that, that is not government policy. Government want to make company move.

---

[3] The Court further notes that in October 2017, Ted Walters prepared a memorandum entitled "State of the Company" for Bae. (Bronze Decl. Ex. H). The memo dated October 17, 2017 "explain[ed] how a corporation works; what rights and duties corporate directors, officers, and shareholders have; how directors and shareholders vote; and how to make the most of a corporation's liability protections." *Id.* at 1. The memo also addressed the Estates of Delbet Swegler and Dometro Pablo. *Id.* at 9-19.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 12 of 48

So, my understanding, Ted Walters also says that majority stockholder, if you move forward to generate some profit, why not? You go ahead.

So, you are questioning two-third? But I - - I understand over 50% we have, so if I go with Mr. Kim like that, keeping silent for 10 years, no product at all. But if I cooperate with Mr. Kim, I can produce many things to make my 40% stockholder happy. So, simply, I was thinking like that. . . .

(Brown Decl. Ex. 7 (Bae Depo. Transcript 240: 11-25 to 241: 1-2, May 24, 2017)).

Although the resolution permitted the majority shareholders and living directors to take such action, Fadian's By-Laws and Articles of Incorporation do not. Further, a corporation's by-laws "*shall* be consistent with [the corporation's] articles of incorporation and *shall* not be inconsistent with the provisions of" the General Corporation Law.[4] 18 G.C.A. § 2201 (emphasis in original). Article Nineteen of Fadian's Fourth Amended Articles of Incorporation sets forth that "[a]ny other provision of the Articles and Bylaws not withstanding, a two-thirds vote of the shareholders will be required to accomplish . . . the sale or encumbrance of significant assets of the corporation." (Bronze Decl. Ex. A). Guam's General Corporation Law also requires for a corporation to sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property with or without the good will, otherwise than in the usual and regular course of business, such transaction must be approved by the stockholders, after a properly noticed stockholder meeting in accordance with 18 G.C.A. § 3105. *See* 18 G.C.A. § 4112.[5] "An officer of a corporation is chargeable with knowledge of its charter and of its bylaws adopted before the officer's appointment." 2 Fletcher Cyc. Corp. § 334. "[F]alse misrepresentations made recklessly and

---

[4] As Fadian was organized in 1989, it is governed by the General Corporation Law. *See* 18 G.C.A. § 1101.1 ("A corporation organized in Guam prior to the effective date of the Guam Business Corporation *shall not* be subject to the Guam Business Corporation Act, and *shall* continue to be governed by this part, except as provided in the Guam Business Corporation Act.").

[5] Title 18 section 4112 provides in relevant part:

The corporation shall notify each stockholder, whether or not entitled to vote, of the proposed stockholders' meeting in accordance with 18 GCA § 3105. The notice must also state that the purpose, or one of the purposes, of the meeting is to consider the sale, lease, exchange, or other disposition of all, or substantially all, the property of the corporation and be accompanied by a description of the transaction.

18 G.C.A. § 4112(d).

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 13 of 48

without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Engalla,* 938 P.2d at 917 (alteration in original). Therefore, the Court does not find that Bae's ignorance of the law or his corporation's own by-laws and articles of incorporation excuses his misrepresentations nor does it make them unintentional. "[T]he only intent by a defendant necessary to prove a case of fraud is the intent to *induce reliance.* Moreover, liability is affixed not only where the plaintiff's reliance is *intended* by the defendant but also where it is *reasonably expected* to occur." *Lovejoy v. AT&T Corp.,* 111 Cal. Rptr. 2d 711, 717 (Cal. Ct. App. 2001), *as modified on denial of reh'g* (Oct. 5, 2001) (emphasis in original). *See also Engalla v. Permanente Med. Grp., Inc.,* 938 P.2d 903, 918 (Cal. 1997) ("A fraudulent state of mind includes not only knowledge of falsity of the misrepresentation but also an intent to induce reliance on it."). In light of the undisputed facts in the record, the Court finds that Bae intentionally acted in a manner to induce MSC to effectuate the First Amendment.

**ii. Imputation**

The Court next turns to the argument that Kim acted as an authorized agent of MSC. Kim did not sign the First Amendment as a representative of MSC but as a managing member of B&K. *See* Am. Compl. Ex. 3. Paul Lee signed the First Amendment as the representative of MSC under the direction of I Cheol Lee. *See id.* There is nothing in the record indicating that Bae thought Kim was acting as MSC's agent.

"Under the rule of imputation, it is fundamental that an employer is liable for the torts of his employee committed while acting in the scope of his employment. The rule exists for good reason: Imputation creates incentives for a principal to choose agents carefully and to use care in delegating functions to them." *In re ChinaCast Educ. Corp. Sec. Litig.,* 809 F.3d 471, 476 (9th Cir. 2015) (internal citations and quotation marks). However:

> a rogue agent's actions or knowledge are not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 14 of 48

*Id.* (citations and quotation marks omitted). "An agent can never have authority, either actual or ostensible,[6] to do an act which is, and is known or suspected by the person with whom he deals, to be a fraud upon the principal." 18 G.C.A. § 20203. A corporation is not "chargeable with the knowledge of an officer who collaborates with outsiders to defraud the corporation." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 47 (Cal. Ct. App. 2005) (citation omitted). *See also Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1205 (Del. 2015) ("the adverse interest doctrine may prevent a court from imputing knowledge of wrongdoing to an employer when the employee has totally abandoned the employer's interests, such as by stealing from it or defrauding it.").

Fadian does not present any evidence that Kim was himself specifically responsible for the fraud against MSC. "Arguments of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n. 4 (9th Cir. 2002). The facts before the Court show that it was Bae's affirmative misrepresentations, orally to Paul Lee and written in the December 2015 Resolution, that he received the necessary approval from Fadian's shareholders for the transfer of all of Fadian's assets to B&K, which caused the fraud. Kim testified in the Swegler lawsuit that when the quitclaim deed was recorded on March 4, 2016, he was not aware of the existence of any other shareholders of Fadian and that he did not know about Fadian's Fourth Amended Articles of Incorporation until after the Swegler lawsuit was filed. *See* Bronze Decl. Ex. N (Kim Depo. Transcript 194: 6-10; 312: 8-21, Nov. 17, 2017). Kim also testified that he never informed I Cheol Lee, MSC director whose company is the controlling shareholder of MSC, that the Property in the First Amendment was going to be transferred to B&K:

> Q. And what about the fact - - did you talk to him about the fact that the property was going to get transferred to B&K?

---

[6] "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." 18 G.C.A. § 20213. "Ostensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess." 18 G.C.A. § 20214.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 15 of 48

A. Me? Pardon me. One more time.

Q. Did you talk to Mr. Chul Lee about the fact that the property was going to get transferred to B&K?

A. No. No.

Q. You didn't talk to him about that?

A. No, no, no. No, no.

* * *

Q. So, you didn't tell him that B&K was going to become the owner of the property?

A. When? When?

Q. Yeah.

A. Yeah, B&K - - after transfer, yeah, B&K's owner of the land.

Q. But did you tell Mr. Lee that you were planning to do that?

A. That's not my plan.

Q. Did you tell Mr. Lee that that was the plan between you and Mr. Bae that you were going to enter into B&K and transfer all of the Fadian property to B&K?

A. No, I didn't say that.

Q. You didn't say that to Mr. Lee?

A. Yeah, I didn't say that. Yeah.

Q. So, he didn't know - -

A. He didn't know.

Q. - - that the quarry site was now going to belong to your company? He didn't know that?

A. No. After amending, yes. Amending is maybe last year. March. Yeah. When that time, amending time, I let him now the contract got to be change to Fadian to B&K. That time, he know; when the amending time.

Q. But you didn't tell him before that?

A. No, no, no. I don't need to tell him.

Q. Okay. But as the CEO of Mariana Stones, you knew that that was what the plan was?

A. What?

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 16 of 48

Q. The plan was between you and Mr. Bae to start a new company and transfer all the assets to the new company. You knew that. Correct?

A. Yes, I knew that. Yeah.

Q. While you were the CEO of MSC. Correct?

A. Yes, correct. Yeah.

(Brown Decl. Ex. 9 (Kim Depo. Transcript 114: 16-25; 115: 16 - 117: 1, Nov. 17, 2017)).

In light of these facts, the Court finds that imputation of Kim's knowledge to MSC would be inappropriate. While Fadian also argues that there are facts such as how "Kim testified about a potential merger between MCS and Fadian prior to Kim offering to Bae the B&K opportunity", *see* Opp'n at 9, and that Kim testified "Bae pick me because I'm the Mariana Stones CEO," *see* Brown Decl. Ex. 8 (Kim Depo. Testimony 73: 1-2, Dec. 7, 2017), the Court does not find that these facts present disputes of material fact related to Kim's agency or imputation to MSC. Rather, the Court finds that these facts indicate that Kim did not have MSC's interests in mind. The Court finds that Kim abandoned MSC's interests and was acting for his own purposes and not on behalf of MSC. Therefore, the Court finds that MSC has shown that there was intent to defraud MSC to induce its reliance.

### D. Reliance

The fourth element MSC must prove is justifiable reliance. *Hemlani,* 2003 Guam 17 ¶ 9. Here, MSC must show that (1) it actually relied on Fadian's misrepresentations and (2) that it was reasonable in doing so. *See Seeger v. Odell,* 115 P.2d 977, 980 (Cal. 1941) ("It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but that he was justified in his reliance.").

#### a. Actual Reliance

"Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations and when, absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction." *Engalla,* 938 P.2d at 919 (alteration in original) (quotation marks and citation omitted). "It is not necessary that a plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 17 of 48

predominant or decisive factor in influencing his conduct. It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Id.* (citing Rest. 2d Torts § 546, com. b, p. 103) (alterations omitted). "[I]t is not necessary to show reliance upon false representations by direct evidence. The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter the contract than his direct testimony to the same effect." *Vasquez v. Superior Court,* 484 P.2d 964, 972 (Cal. 1971).

MSC controlling shareholder I Cheol Lee sets forth that:

> The fact that Bae presented Paul an original executed board of directors resolution from Fadian stating that all the directors had consented and the approval was in accordance with Fadian's by-laws was a decisive factor in influencing MSC's execution of the First Amendment to B&K as those were my oral instructions to Paul when he called me on March 24, 2016, after receiving Bae's call. Without the board of directors resolution from Fadian, my instruction to Paul was not to proceed with the assignment.

(I Cheol Lee Decl. ¶ 14, Apr. 17, 2023). I Cheol Lee also states that "[h]ad MSC known that Bae had never even noticed a meeting of the shareholders of Fadian and that Fadian had never received the requisite approval of 2/3 of Fadian's outstanding shareholders in accordance with Fadian's By-Laws, MSC would not have executed the First Amendment assigning the Agreement to B&K as those were my oral instructions to Paul." *Id.* at ¶ 17. Fadian has not set forth any facts contrary to this. The Court finds that MSC has shown that it relied on the oral and written misrepresentations in proceeding with the assignment, as MSC would not have otherwise gone forward with executing the Assignment without the consent and approval of Fadian's directors in accordance with Fadian's by-laws.

### b. Justifiable Reliance

The Court must next determine whether or not MSC's reliance was justifiable. *See Seeger,* 115 P.2d at 980. "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact. However, whether a party's reliance was justified may be decided as a matter of

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 18 of 48

law if reasonable minds can come to only one conclusion based on the facts." *All. Mortg. Co. v. Rothwell,* 900 P.2d 601, 609 (Cal. 1995) (citations omitted). "Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent." *Seeger,* 115 P.2d at 980. *See also* Rest. 2d Torts § 504 ("The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the misrepresentation had he made an investigation."). "The fact than an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery, and it is well established that he is not held to constructive notice of a public record which would reveal the true facts." *Seeger,* 115 P.2d at 980. (internal citations omitted). "Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. . . . If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery." *Id.* at 980-81 (citations omitted).

Here, the Court finds that there is only one conclusion can be made in light of the facts before it: that justifiable reliance exists because it was reasonable for MSC to accept Fadian's statements, by and through Bae, without an independent inquiry or investigation, in light of the General Corporation Law. The Court does not find that MSC, by and through either Paul Lee who signed the First Amendment to the Agreement or I Cheol Lee as the controlling shareholder who directed Paul Lee to execute the First Amendment, "put faith in representations which are preposterous, or which are shown by facts within [their] observation to be so patently and obviously false that [they] must have closed [their] eyes to avoid discovery of the truth." *Seeger,* 115 P.2d at 981. Therefore, the Court finds MSC has shown that the reliance was justifiable.

**E. Damages**

Lastly, the fifth element MSC must prove is damages as a result of the misrepresentation. *Hemlani,* 2003 Guam 17 ¶ 9. Under Guam law, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." 18 G.C.A. § 90102. Generally speaking, under this statute "[t]here are two measures for damages for fraud: out-of-pocket and benefit of the bargain." *HRC Guam Co. v. Bayview II*

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 19 of 48

*L.L.C.*, 2017 Guam 25 ¶ 74 (quoting *Alliance Mortg. Co. v. Rothwell*, 900 P.2d. 601, 609 (Cal. 1995)).

> The 'out-of-pocket' measure of damages is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received. The 'benefit-of-the-bargain' measure, on the other hand, is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation relied upon had been true; it awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive. In California, a defrauded party is ordinarily limited to recovering his 'out-of-pocket' loss....

*Alliance Mortg.*, 900 P.2d at 609 (internal citations omitted).

MSC sets forth that its' out-of-pocket damages are:

> (i) $98,464.19 reflecting lost production costs relating to the performance of the supply contract to San Juan Construction Inc., (ii) $466,000.00 reflecting production costs for aggregate and rock materials produced after March 24, 2016; $126,000 reflecting advancement of payments and royalties to Fadian, Fadian's board members after March 24, 2016, $39,653.67 reflecting payments made by MSC to the Superior Court of Guam in accordance with Article 4(b) of the Agreement; $21,860.00 reflecting moving costs to the Property after March 24, 2016; $238,648.71 reflecting mobilization and setting up costs for aggregate production on the Property after March 24, 2016; $145,951.89 reflecting professional, engineering and government fees for the Property site paid by MSC after March 24, 2016; $46,500.00 reflecting attorney fees incurred in its defense in the Swegler action (excluding legal fees in the defense of this action) and $553,216.68 in costs and expenses incurred to demobilize, close quarry operations on the Property and termination of employees under the First Amendment, for an aggregate of $1,736,294.68.

(Mot. Summ. J. at 20-21). Although MSC sets forth these specific costs, the Court finds that there are facts unknown to fully determine the differences between what MSC gave and what it received to constitute appropriate damages. The schedule of damages, for example, concerning costs and expenses since closure of operation addresses salaries for as many as eight employees, wages, rent, utilities and other costs and expenses over a period of three years (2017 to 2020). *See* MSC Decl. Ex. E (Attachment 9). The Court has insufficient information to determine the

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 20 of 48

appropriateness of all these expenses just in evaluating this schedule of damages at this time. Accordingly, the Court finds summary judgment inappropriate as to this element.

## IV. Negligent Misrepresentation

MSC's second cause of action against Fadian alleges negligent misrepresentation. (Am. Compl. ¶¶ 50-63). The elements of negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages." *Hemlani*, 2003 Guam 17 ¶ 9 (internal quotation marks and citation omitted). "The essential elements of a count for negligent misrepresentation are the same [as a count for intentional misrepresentation] except that it does not require knowledge of falsity but instead requires a misrepresentation of a fact by a person who has no reasonable grounds for believing it to be true." *Chapman v. Skype Inc.*, 162 Cal.Rptr. 3d 864, 875 (Cal. Ct. App. 2013) (citations omitted). *See also, Moncada v. West Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 611 (Cal. Ct. App. 2013) ("where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent representation, a form of deceit.").

### A. Misrepresentation

The first element MSC must prove is that there was a misrepresentation of a past or existing material fact. *Hemlani*, 2003 Guam 17 ¶ 9. As the first element of negligent misrepresentation is the same as intentional misrepresentation, the Court finds that MSC has proven a misrepresentation occurred as set forth earlier.

### B. No Reasonable Grounds to Believe Misrepresentation

The second element MSC must prove is that Fadian was without reasonable grounds for believing the misrepresentation was true. *Hemlani*, 2003 Guam 17 ¶ 9. The Court finds that in light of Bae's deposition testimony in the Swegler lawsuit, he was without reasonable grounds for believing his representations to MSC were true. Bae testified that he did not notice a meeting of the shareholders to vote on the asset transfers out of Fadian, which included the property subject

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 21 of 48

to the Agreement, because he did not think they would consent to the sale, and that he did not want to represent to MSC that Fadian had other shareholders. *See* Am. Compl. Ex. 7 (Bae Depo. Transcript 255: 1-5; 13-25, May 24, 2017). Further, he was without reasonable grounds for believing that he did not have to notice all the shareholders in light of Fadian's Fourth Amended Articles of Incorporation and Guam's General Corporation Law. *See* Bronze Decl. Ex. A; 18 G.C.A. §§ 3105; 4112. Therefore, the Court finds that MSC has proven that Fadian, by and through Bae, was without reasonable grounds for believing the misrepresentation was true.

## C. Intent

The third element MSC must prove is that Fadian acted with intent to induce another's reliance on the fact misrepresented. *Hemlani,* 2003 Guam 17 ¶ 9. "[N]egligent misrepresentation does not require proof of an intent to defraud." *Borman v. Brown,* 273 Cal. Rptr. 3d 868, 879 (Cal. Ct. App. 2021) (citation omitted). The Court finds, similarly to intentional misrepresentation, that Fadian acted with intent to induce MSC's reliance on the misrepresentation, as there was no reason for Fadian to act as it did, by and through Bae, except to induce MSC to execute the First Amendment.

## D. Ignorance of the Truth and Justifiable Reliance

The fourth element MSC must prove is that MSC was ignorant of the truth and justifiably relied on the misrepresentation. *Hemlani,* 2003 Guam 17 ¶ 9. Fadian argues that "MSC could not possibly be ignorant of the truth as MSC started the entire plan via Kim's agency" and "Bae did not have to induce MSC's reliance because MSC induced Bae to act via Kim." (Opp'n at 6). Fadian, however, does not present evidence supporting these arguments. *See Barcamerica Int'l USA Trust,* 289 F.3d at 593 n. 4 ("Arguments of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment."). The facts before the Court do not show that MSC "started the entire plan via Kim's agency" as the original Agreement and the First Amendment were negotiated by Paul Lee upon direction of I Cheol Lee. *See, e.g.,* I Cheol Lee Decl., Apr. 17, 2023. Kim's deposition testimony in the Swegler lawsuit set forth that he never informed I Cheol Lee that the Property in the First Amendment was going to be transferred to B&K prior to the First Amendment being effectuated.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 22 of 48

(Bronze Decl. Ex. N (Kim Depo. Testimony 115: 16 – 117: 1, Nov. 17, 2017)). Further, it was Bae's misrepresentations, orally to Paul Lee, and as written in the December 2015 resolution, that he received the necessary approval from all of Fadian's shareholders for the transfer of all of Fadian's assets to B&K, in accordance with Fadian's by-laws, that caused the fraud. Therefore, the Court finds that MSC was ignorant of the truth. The Court also finds, similarly to intentional misrepresentation, that MSC relied on the misrepresentation.

The Court next turns to whether or not the reliance was justifiable. "Even in case[s] of a mere negligent misrepresentation, a plaintiff is not barred unless his conduct, in the light of his own information and intelligence is preposterous and irrational." *Hartong v. Partake, Inc.*, 72 Cal. Rptr. 722, 737 (Cal. Ct. App. 1968) (citation omitted). "A defendant who misrepresents the facts and induces the plaintiff to rely on his statements should not be heard in an equitable action to assert that the reliance was negligent unless plaintiff's conduct, in the light of his intelligence and information, is preposterous or irrational." *Van Meter v. Bent Const. Co.*, 297 P.2d 644, 648 (Cal. 1956) (citation omitted). Thus, the Court must determine whether MSC, by and through either Paul Lee or I Cheol Lee's conduct, in the light of their intelligence and information was preposterous and/or irrational. Again, as set forth earlier under intentional misrepresentation, the Court finds that MSC's conduct was not preposterous or irrational. The Court finds that in light of their prior business dealing with Fadian with the initial agreement and there being no issues therein, there was nothing to indicate that there was a foul or bad relationship between the two parties that would cause them to believe that they would not be able to trust Bae's statements as Chairman of Fadian. Further, the Court finds that it would be reasonable for them to presume that any transfer of assets would be in accordance with Guam law (i.e. the General Corporation Law). Therefore, the Court finds that MSC has shown justifiable reliance and grants summary judgment as to this element.

**E. Damages**

The last element MSC must prove is damages. *Hemlani,* 2003 Guam 17 ¶ 9. The Court adopts the same analysis as set forth in the discussion regarding damages for intentional misrepresentation and finds summary judgment inappropriate as to this element.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 23 of 48

## V. Fraudulent Inducement

MSC's third cause of action against Fadian alleges fraudulent inducement. (Am. Compl. ¶¶ 64-72). "Fraud in the inducement is fraud occurring when a misrepresentation leads another to enter into a transaction with a false impression of risks, duties, or obligations involved." *Gov't of Guam v. Kim,* 2015 Guam 15 ¶ 42 (citation omitted). "[T]ort law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Id.* (citation omitted). *See also Hinesley v. Oakshade Town Center,* 37 Cal.Rptr.3d 364 (Cal. Ct. App. 2005) (fraud occurring when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable."); *Parino v. BidRack, Inc.,* 838 F. Supp. 2d 900, 906 (N.D. Cal. 2011) ("Fraud in the inducement is a subset of fraud. It occurs when the promisor knows what he is signing but his consent is induced by fraud."). In light of the Court finding earlier that an intentional misrepresentation occurred which led MSC to enter into the First Agreement, the Court finds that MSC has also shown fraudulent inducement, and grants summary judgment as to this cause of action.

## VI. Fadian's Affirmative Defenses

An affirmative defense "is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven. It is a defense on which the defendant has the burden of proof." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program,* 718 F. Supp. 2d 1167, 1173–74 (N.D. Cal. 2010) (internal citations and quotation marks omitted). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010). If the movant meets that burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.*

Since the filing of Fadian's Answer on June 10, 2021, Fadian has withdrawn several of its affirmative defenses. Affirmative defenses numbered 22, 28, 31, 32, 25, and 36 were withdrawn and dismissed with prejudice through a Stipulation and Order filed March 9, 2023. Affirmative

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 24 of 48

defenses numbered 6, 9, 12, 14, 15, and 16 were withdrawn in Fadian's May 31, 2023 Opposition to the Motion for Summary Judgment. The Court will address each of the remaining affirmative defenses.

### A. Affirmative Defenses 1 and 2: Failure to State a Claim and Failure to State a Cause of Action

Fadian's first and second affirmative defenses allege failure to state a claim and failure to state a cause of action. (Ans. at 3). The Court finds that these defenses are not affirmative defenses. *See, e.g., Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F.Supp.2d 1283, 1292 (S.D. Fl. 2007). ("[f]ailure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense."); *Barnes*, 718 F.Supp. 2d at 1174 ("Failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in [Plaintiff's] prima facie case."). The Court also notes that these two defenses were previously addressed in the Court's May 20, 2021 Decision and Order, wherein the Court denied Fadian's Motion to Dismiss under GRCP 12(b)(6) (failure to state a claim upon which relief can be granted). The Court therefore grants summary judgment on Defendant's first and second affirmative defenses in favor of MSC.

### B. Affirmative Defense 3: Supervening, Intervening Events and/or Parties

Fadian's third affirmative defense is that "Plaintiff's causes of action are barred by supervening, intervening events and/or parties." (Ans. at 3). In its Response to Plaintiff's First Set of Interrogatories, Fadian set forth that "Su Heon Kim's conduct is a supervening event that was unforeseeable to Fadian. Further, Plaintiff's alleged harm traces back to Judge Barcinas's Order Granting Preliminary Injunction (Jan. 24, 2017) and Order on Mariana Stone Corporation's Motion for Clarification of Preliminary Injunction (Sept. 15, 2017), not Fadian." (Bronze Decl. Ex. J (Fadian Resp. to Plt.'s First Set of Interrogatories at 3)). Fadian later supplemented its response adding that:

> Plaintiff Mariana Stones Corporation ("MSC") had full knowledge that the real property at issue was being transferred to B&K Development, LLC. ("B&K"). The officers of MSC including Su Heon Kim as CEO of MSC, and Paul Lee were

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 25 of 48

negligent and careless that they did not conduct their due diligence when the real property was being transferred to B&K. In addition, MSC completely ignored prior advice and warnings that all Fadian shareholders' approval was required before any transfer to B&K would be valid. MSC's officers negligence and/or carelessness, and ignorance of prior advice, is imputed to MSC, and therefore MSC is precluded from seeking any damages against Defendant Fadian Development, Inc.

(Bronze Decl. Ex. K (Fadian Supp. Resp. to Plt.'s First Set of Interrogatories at 3-4)).

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Restatement (Second) of Torts § 440 (1965)). "An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." (Restatement (Second) of Torts § 441(1) (1965)).

> The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:
>
> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

Restatement (Second) of Torts § 442 (1965).

As to Fadian's statement that "Kim's conduct is a supervening event that was unforeseeable to Fadian," MSC argues that such statement "is a complete nonstarter, given that Bae, Fadian's majority shareholder, president, and chairman of the board of directors, was in

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 26 of 48

cahoots with Kim, who was the other half of B&K." (Mot. Summ. J. at 29). The Court is inclined to agree. Such conduct cannot be deemed unforeseeable in light of Kim's status as a managing member of B&K.

As to Fadian's statement that MSC's harm traces back to the Swegler lawsuit, MSC argues that "the Orders applied to MSC only because of Fadian's fraud in bringing about MSC's entry into the First Amendment, and more broadly, the transfer of the Property to B&K." (Mot. Summ. J. at 29). Fadian opposes, arguing that "[t]here was no intent, belief, or predictability that the heirs of deceased shareholders would file suit and the prior court would terminate the agreements in this case." (Opp'n at 13). The Court finds that while Judge Barcinas's orders ultimately prevented MSC from continuing to use the Property, such orders stemmed from Fadian's actions, by and through Bae and Ryu. *See* Bronze Decl. Ex. F (CV0452-16 Dec. & Order at 15) (finding that Defendants Bae and Ryu breached their fiduciary duties to Fadian by transferring the Fadian Property to B&K). The Court further finds that such court intervention may have been foreseeable and that an injunction might be ordered as a result when proper notice wasn't provided under the corporations' by-laws and the General Corporation Law prior to the transfer of Fadian's assets to B&K.

Lastly, the Court turns to Fadian's statement that MSC's officers were "negligent and careless that they did not conduct their due diligence when the real property was being transferred to B&K" and such "negligence and/or carelessness, and ignorance of prior advice, is imputed to MSC." (Bronze Decl. Ex. K at 3-4). MSC argues that it "had no duty to investigate that Fadian had conveyed its title interest to the Property to B&K." (Mot. Summ. J. at 25). "As a general rule negligence of the plaintiff is not defense to an intentional tort." *Seeger,* 115 P.2d at 980 (citation omitted). "The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery and it is well established that he is not held to constructive notice of a public record which would reveal the true facts." *Id.* at 414-15 (citations omitted). Thus, the Court finds that this defense does not apply to MSC's first and third causes of action – intentional misrepresentation and fraudulent inducement. While this defense may apply to the second cause of action – negligent misrepresentation – the Court finds that such

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 27 of 48

defense is more appropriately framed in the comparative negligence context,[7] rather than as a superseding or intervening event or party.[8] Accordingly, the Court finds that Fadian's affirmative defense of supervening, intervening events and/or parties cannot succeed and grants summary judgment in favor of MSC.

### C. Affirmative Defense 4: Impossibility and Impracticability

Fadian's fourth affirmative defense is that the doctrines of impossibility and impracticability relieve Fadian of any liability to MSC. (Ans. at 3). "[I]mpossibility or impracticability may arise when a supervening event makes a party's *performance* objectively impossible or impracticable." *Palmer v. Mariana Stones Corp.*, 2021 Guam 5 ¶ 43 (emphasis in original). "Impossibility is a defense to contract enforcement." *Id.* (citation omitted). Here, MSC has not asserted a claim for breach of contract, only claims for fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement. Accordingly, the Court finds the defenses of impossibility and impracticability inapplicable in this matter.

### D. Affirmative Defense 5: Innocent Misrepresentation

Fadian's fifth affirmative defense asserts "innocent misrepresentation." (Ans. at 3). Fadian asserts in discovery that it "had reasonable grounds to believe that Myung Mok Bae was acting in the best interest of Fadian when he engaged with Plaintiff and Plaintiff fails to substantiate any alleged misrepresentation." (Bronze Decl. Ex. J at 7). The Court finds that this

---

[7] Guam "follows the doctrine of comparative negligence, and the amount of negligence attributable to each party is solely within the province of the jury." *Salas by & through Gaa v. Hanil Dev. Co.*, 1993 WL 128224, at *4 (D. Guam App. Div. Apr. 8, 1993) (internal citation omitted). Title 18 G.C.A. section 90108 provides:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed under the law on Compensatory Relief shall be diminished in proportion to the amount of negligence attributable to the person recovering.

18 G.C.A. § 90108.

[8] The Court further notes that Fadian did not assert the affirmative defense of comparative negligence in this matter in its Answer. Therefore, such defense is waived. *See Palmer*, 2021 Guam 5 ¶ 16 (waiver of affirmative defenses by failure to plead); *see also,* Guam R. Civ. P. 8(c) (a party must set forth affirmatively affirmative defenses in pleading to a preceding pleading).

---

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

is not an affirmative defense, rather that it is a defense on the merits of the case in that Fadian is arguing that MSC cannot prove elements of its fraud claims. *See, e.g., Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). Further, the Court has determined that an intentional misrepresentation occurred. Therefore, the Court finds that this defense fails and summary judgment should be granted in favor of MSC.

**E. Affirmative Defense 7: Bad Faith**

Fadian's seventh affirmative defense is that MSC is "acting in bad faith." (Ans. at 3). In discovery, Fadian indicates that this defense is based on the following:

> This is the fourth complaint Plaintiff has filed against Fadian, the previous three have been dismissed. The Complaint in CV452-16 was voluntarily dismissed by Plaintiff on September 5, 2017, and the Complaint in CV883-17 was dismissed by Plaintiff via stipulation of the parties on June 6, 2019. The Original Complaint herein was dismissed by the Court on September 18, 2020. Further, Plaintiff's allegations in the Amended Complaint contradict the allegations in the Original Complaint.

(Bronze Decl., Ex. J at 11). MSC argues that this defense fails because Fadian appears to be suggesting a bad-faith litigation defense, e.g., Rule 11 sanctions, rather than an affirmative defense such as unclean hands. (Mot. Summ. J. at 34). In response, Fadian argues that it "should be free to argue that MSC is simply upset with the outcome from Kim's actions and would rather take out their frustrations by suing Fadian than pursue a claim against Kim." (Opp'n at 14).

The Court notes that Fadian has separately pled unclean hands as an affirmative defense. To the extent that Fadian's bad faith argument falls under unclean hands,[9] the Court addresses that issue separately further below. Additionally, as to any contradictions or discrepancies between the allegations in the Amended Complaint and the initial Complaint, the Court granted leave to MSC to file an amended complaint pursuant to GRCP 15(a) and Fadian has not pled judicial estoppel as a defense in this matter. *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.,* 753

---

[9] *See, e.g., Guam Top Builders, Inc. v. Tanota Partners,* 2012 Guam 12 ¶ 26 ("Traditionally, the doctrine of unclean hands is invoked when one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct.").

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 29 of 48

F.3d 350, 554 (5th Cir. 2014) ("once a court has accepted and relied upon one of a party's several alternative positions, any argument with that position may be subject to judicial estoppel in subsequent proceedings."). Therefore, the Court finds that the defense of bad faith cannot succeed and grants summary judgment in favor of MSC as to this defense.

### F. Affirmative Defense 8: Failure to Mitigate Damages

Fadian's eighth affirmative defense is that Plaintiff failed to mitigate any damages and other losses. (Ans. at 3). Fadian sets forth in discovery that "Plaintiff executed the First Amendment to the Agreement voluntarily and without objection. Further, the damages allegedly incurred by Plaintiff are not caused by Fadian. Instead, Plaintiff's alleged damages trace back to Judge Barcinas's Order Granting Preliminary Injunction (Jan. 24, 2017) and Order on Mariana Stone Corporation's Motion for Clarification of Preliminary Injunction (Sept. 15, 2017)." (Bronze Decl. Ex. J at 12). Fadian also supplemented its response with the statement that MSC is precluded from seeking any damages because Lee and Kim's knowledge is imputed to MSC. (Bronze Decl. Ex. K at 10). MSC argues that this defense fails as a matter of law because "the basis asserted by Fadian for its eighth affirmative defense has nothing to do with the doctrine of mitigation of damages." (Mot. Summ. J. at 36). Fadian opposes, arguing that "[m]itigation of damages can also be a partial defense as if the Court did find Fadian liable, the award would be reduced where MSC failed to mitigate. MSC has asked the Court to include damages for their operational changes in their Complaints. Equipment that can be sold or used in other business opportunities should not be charged to Fadian." (Opp'n at 15).

"In order to prove a failure to mitigate, a defendant must establish: (1) reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Aircraft Guar. Corp. v. Strato-Lift, Inc.*, 991 F.Supp. 735, 739 (E.D. Pa. 1998) (quoting *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1448 (3d. Cir. 1996)). "[T]he duty to mitigate is not necessarily an absolute defense, but rather concerns the amount of damages a plaintiff can recover. The amount recoverable by the damaged party must be reduced by the amount of losses which could have been avoided by that party's reasonable efforts to avoid them." *Id.* (internal quotation marks,

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 30 of 48

alteration, and citation omitted). "The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable." *Agam v. Gavra,* 186 Cal. Rptr. 3d 295, 311 (Cal. Ct. App. 2015) (citation omitted). "Whether a plaintiff acted reasonably to mitigate damages is a factual matter to be determined by the trier of fact. The burden of proving a plaintiff failed to mitigate damages is on the defendant." *Id.* (citations and quotation marks omitted). "A defrauded party whose claim is subject to the out-of-pocket measure of damages may also recover funds expended to mitigate damages, provided that the funds do not exceed the damages prevented or reasonably anticipated." *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.,* 68 Cal. Rptr. 3d 828 (Cal. Ct. App. 2007) (internal quotation marks, alteration, and citation omitted).

Here, all that Fadian sets forth in its Opposition is that "[e]quipment that can be sold or used in other business opportunities should not be charged to Fadian." (Opp'n at 15). This statement alone is not demonstrative evidence that MSC failed to mitigate. Fadian has not presented any evidence (e.g., a declaration) that raises any factual questions as to whether MSC made any effort to mitigate or whether such effort was reasonable under the circumstances.[10] *See Buehler v. Alpha Beta Co.,* 733, 274 Cal. Rptr. 14, 15 (Cal. Ct. App. 1990) ("The party opposing the summary judgment cannot rely on its pleadings, but must make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact if the moving party's evidence, standing alone, is sufficient to entitle the party to judgment"). Therefore, the Court grants summary judgment on this defense in favor of MSC.

### G. Affirmative Defense 10: Estoppel

Fadian's tenth affirmative defense is that MSC's claims are barred by the doctrine of estoppel. (Ans. at 3). In discovery, Fadian indicates that the basis for this defense is that "Plaintiff voluntarily entered into the original Agreement, and Plaintiff has not brought a cause of action

---

[10] The Court further notes, as MSC argues, that Fadian in its discovery responses regarding this defense also did not provide information regarding mitigation of damages, setting forth instead that the damages were caused by superseding or intervening events and/or persons. *See* Bronze Decl. Ex. J at 12 and Ex. K at 10.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 31 of 48

for the original Agreement, nor does it seek to cancel the original Agreement. As such Plaintiff is estopped from bringing a cause of action rooted from the original Agreement." (Bronze Decl. Ex. J at 15-16). Fadian supplemented its discovery response with the statement that MSC is precluded from seeking any damages from Fadian because Lee and Kim's knowledge is imputed to MSC. (Bronze Decl. Ex. K at 14). MSC acknowledges that it "has not asserted a claim in its Amended Complaint for breach of the original Agreement" but sets forth that it "has asserted claims for intentional and negligent misrepresentation and fraudulent inducement, based on Fadian's misrepresentations that induced MSC's entry into the First Amendment, which, in light of the Court's rulings in the Swegler Action, caused MSC to lose the benefit of its contract with Fadian." (Mot. Summ. J. at 39).

"Equitable estoppel is defined as [t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had. The doctrine ... is designed to prevent a miscarriage of justice and is to be *used cautiously* because it bars the normal assertion of rights otherwise present." *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9 ¶ 24 (internal citations and quotation marks omitted) (alterations and emphasis in original). "Guam has codified the doctrine of equitable estoppel in Title 6 GCA § 5106(3)." *Id.* Section 5106 provides:

> The following presumptions, and no others, are deemed conclusive .... Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it.

6 G.C.A. § 5106(3). The party relying on the doctrine of estoppel "has the burden to prove the existence of the four required elements essential to its application." *Mobil Oil Guam, Inc.,* 2004 Guam 9 ¶ 24 (citation omitted). The four elements that must be proven are that:

> (1) the party to be estopped must be apprised of the facts;
>
> (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 32 of 48

(3) the party asserting the estoppel must be ignorant of the true state of the facts; and

(4) he must rely upon the conduct to his injury.

*Id.*

Here, Fadian argues that the factors have been met because (1) MSC was aware of the facts through Kim's agency; (2) Kim did intend for Fadian to act upon Kim's request; (3) Fadian was ignorant as to the possible results of Kim's proposals; and (4) Fadian was also harmed when the earlier court stopped aggregate processing at Fadian's property. (Opp'n at 16). The Court disagrees. As noted earlier, the Court does not find that Kim acted as an agent of MSC and his actions are not imputed to MSC. Thus, MSC, the party to be estopped, was not apprised of the facts – that Bae did not notice a meeting of the shareholders to vote on the asset transfers out of Fadian, which included the Property subject to the Agreement. Further, Fadian, through Bae, was not ignorant of the true state of the facts. As the Court noted earlier, Bae testified in the Swegler lawsuit that he did not notice a meeting of the shareholders to vote on the transfer of assets from Fadian to B&K because he did not think they would consent to the sale and he did not want to represent to MSC that Fadian had other shareholders. Therefore, the Court finds that Fadian has not shown that the four factors have been met, and grants summary judgment in favor of MSC as to this defense.

## H. Affirmative Defense 11: Waiver

Fadian's eleventh affirmative defense is that MSC's claims are barred by the doctrine of waiver. (Ans. at 3). Fadian indicates in discovery that MSC "has not brought a cause of action from the original Agreement, nor is it seeking to cancel the original Agreement. As such, Plaintiff has waived a cause of action that roots from the original Agreement, including the claims set forth in the instant matter." (Bronze Decl. Ex. J at 17). MSC argues that Fadian's defense of waiver fails as a matter of law because "MSC has specifically asserted claims that Fadian's tortious actions deprived MSC of the benefits of that same Agreement." (Mot. Summ. J. at 41). Fadian opposes, arguing that this defense relates to its argument that MSC had unclean hands "due to their agent Kim being the bad actor in this case." (Opp'n at 15).

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 33 of 48

"Waiver is the intentional relinquishment of a known right. A waiver can be shown by the affirmative acts of a party or by conduct that supports the conclusion that waiver was intended. When the waiver is implied, intent is inferred from the facts and circumstances constituting the waiver." *Gov't of Guam v. WSTCO Quality Feed & Supply,* 2019 Guam 16 ¶ 15 (internal quotation marks, alterations, and citations omitted). The Court notes that Fadian's basis for this affirmative defense in its discovery responses to MSC's interrogatories does not appear to match what it sets forth in its opposition to the instant motion. To the extent that Fadian is arguing that the defense of waiver relates to the defense of unclean hands, the Court finds that it is duplicative. Further, Fadian does not cite to any specific facts in the record indicating that Kim solicited Bae to carry out the asset transfer and assignment. The facts before the Court at this time indicate that it was Bae who executed the Quitclaim Deed from Fadian to B&K and that it was Bae who contacted Paul Lee to execute the First Amendment. The Court also does not find that MSC waived its causes of action by not bringing a claim for breach of the original agreement as the causes of action asserted in this matter allege that MSC lost the benefit of its contract resulting in damages. Therefore, the Court finds that summary judgment should be granted in favor of MSC on this affirmative defense.

### I. Affirmative Defense 13: Unclean Hands

Fadian's thirteenth affirmative defense is that MSC's claims are barred by the doctrine of unclean hands. (Ans. at 3).

> The doctrine of unclean hands is an affirmative defense involved by defendants to prevent a plaintiff from obtaining relief. Traditionally, the doctrine of unclean hands is invoked when one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct. Any unconscientious conduct in the transaction may give rise to the defense. Whether the defense of unclean hands should bar a remedy otherwise available depends upon an analysis of the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries.

*Guam Top Builders, Inc. v. Tanota Partners,* 2012 Guam 12 ¶ 26 (internal citations and quotation marks omitted). The unclean hands doctrine is applied "to prevent a finding of merit in situations where one of the parties planned and executed fraud or inequitable devices to obtain an improper

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 34 of 48

advantage over the other side." *Delfino v. Delfino*, 77 Cal. Rptr. 526, 530 (Cal. Ct. App. 1969). *See also Stockton v. Ortiz,* 120 Cal. Rpt. 456, 466 (Cal. Ct. App. 1975) ("This doctrine, in general prescribes, at law and in equity, that the courts will not aid either party to a transaction which is illegal or contrary to public policy where the parties are equally at fault, but will leave the parties where it finds them."); *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 484 (Del. Ch. 2022) ("The question raised by a plea of unclean hands is whether the plaintiff's conduct is so offensive to the integrity of the court that his claims should be denied, regardless of their merit."). The doctrine of unclean hands is "not a weapon to be wielded by parties seeking to excuse their own inequitable behavior by pointing out a trifling instance of impropriety by their counterpart." *Aizen,* 285 A.3d at 485 (alterations and citation omitted). "Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." *Kendall-Jackson Winery, Ltd. v. Superior Court,* 90 Cal.Rptr. 2d 743 (Cal. Ct. App. 1999), *as modified on denial of reh'g* (Jan. 3, 2000). "Factual questions related to the defense of unclean hands may only be resolved on summary judgment if the evidence presented by both sides would permit the trier of fact to come to only one conclusion." *Metal Jeans, Inc. v. Metal Sport, Inc.*, 987 F.3d 1242, 1244 (9th Cir. 2021) (citation omitted).

In discovery, Fadian sets forth three theories as to why MSC has unclean hands: (1) MSC's "failure to bring a timely cause of action for fraud against Fadian is barred by the unclean hands doctrine because Plaintiff waited too long," "Plaintiff has engaged in inequitable behavior by entering into the Agreement without having shareholder consent to the Agreement," and MSC is precluded from seeking any damages because Lee and Kim's knowledge is imputed to MSC. *See* Bronze Decl. Ex. J at 20; Bronze Decl. Ex. K at 17-18.

As to Fadian's statement that MSC waited too long to bring a timely cause of action for fraud, the Court notes that it addressed a statute of limitations issue in its Decision and Order filed May 20, 2021, finding that the initial complaint was timely filed because "MSC should have been aware of the purported fraudulent conduct as early as March 2017 and no later than May 24, 2017." (Dec. & Order at 5, May 20, 2021). This matter commenced on November 18, 2019, with

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 35 of 48

the filing of MSC's initial complaint. Fadian is arguing unclean hands based on procedural issues.[11] Therefore, the Court finds the unclean hands doctrine inapplicable based on these facts.

The Court next turns to the alleged inequitable conduct. The inequitable conduct or behavior alleged to have been engaged in by MSC is that it entered "into the Agreement without having shareholder consent to the Agreement." (Bronze Decl. Ex. J at 20). "The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 47-48 (Cal. Ct. App. 2005) (alteration and citation omitted). "The question is whether the unclean conduct relates directly to the *transaction* concerning which the complaint is made, i.e., to the *subject matter* involved and not whether it is part of the basis upon which liability is being asserted." *Id.* at 48. (emphasis in original) (quotation marks and citation omitted). MSC argues that this defense fails because "that [is] the whole point of this action, that is, that Fadian's misrepresentations concerning the consent of its own directors and shareholders fraudulently induced MSC into entering into the First Amendment." (Mot. Summ. J. at 43). The Court agrees. The shareholder approval/consent was misrepresented by Bae and the alleged inequitable conduct fails.

Lastly, as to allegations that Kim acted as MSC's agent and his actions should be imputed to MSC, the Court previously found that Kim's actions cannot be imputed to MSC. Therefore, while Fadian argues that Kim was equally culpable as Bae, *see* Opp'n at 8, the Court finds that Fadian has failed to show the relationship of Kim's alleged misconduct to the injuries claimed by MSC because his actions cannot be imputed to MSC. Therefore, the Court finds that Fadian has failed to present any disputed facts as to unclean hands and imputation, and grants summary judgment in favor of MSC as to this defense.

**J. Affirmative Defenses 17 & 21: Standing & Causation**

---

[11] The Court notes that Fadian initially plead statute of limitations and latches as affirmative defenses in its Answer but subsequently withdrew them. *See* Ans. at 3, Jun. 10, 2021 & Opp'n at 14, May 31, 2023.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 36 of 48

Fadian's seventeenth affirmative defense is that MSC lacks standing. (Ans. at 4). Fadian's twenty-first affirmative defense is that MSC's claims do not establish causation. *Id.* For both its defenses of standing and causation, Fadian asserted in discovery that MSC "fails to plead causation such that it can be fairly traced back to Fadian. Bae's conduct alone is not sufficient to trace Plaintiff's damages to Fadian. Instead, causation may be traced back to Su Heon Kim's conduct." (Bronze Decl. Ex. J at 25). Fadian also supplemented its response with the statement that MSC is precluded from seeking any damages because Lee and Kim's knowledge is imputed to MSC. (Bronze Decl. Ex. L (Fadian Second Supp. Responses to Plt.'s First Set of Interrogatories at 8-9)).

"Standing is a threshold jurisdictional matter, and as such, this issue can be raised at any stage of the proceedings." *Pia Marine Homeowners Ass'n v. Kinoshita Corp. Guam, Inc.*, 2013 Guam 6 ¶ 13 (internal quotation marks and citation omitted). "[S]tanding may be based on the common-law standing as governed by Article III, or upon statutory standing as governed by Guam statutory law." *Id.* (internal quotation marks and citation omitted). "The party seeking to establish injury has the burden of proving standing." *Id.* (citation omitted).

> To establish constitutional standing, a party must show: (1) it has suffered an injury in fact; (2) that the injury can be fairly traced to the challenged action taken by the defendant; and (3) that 'it is likely and beyond mere speculation that a favorable decision will remedy the injury sustained. To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. Traceability is a causation requirement. A plaintiff proves causation by showing a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court. Redressability requires a plaintiff to make a modest showing that a favorable ruling would require the defendant to redress the plaintiff's injury.

*Hemlani v. Melwani*, 2021 Guam 26 ¶ 23 (internal citations, quotation marks, and alterations omitted). "A court assesses standing when a complaint is filed. The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Id.* (citations omitted).

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 37 of 48

The defenses of standing and causation are therefore tied together. MSC must establish causation to establish standing and must also establish causation to prevail on its causes of action. Proximate cause includes "a determination that the negligent conduct of an actor is the cause-in-fact of the injury suffered as well as a determination that the act produced the injury in a natural and continuous sequence unbroken by any new independent cause which supersedes the negligent conduct of the original actor." *Nissan Motor Corp. v. Sea Star Grp.*, 2002 Guam 5 ¶ 31 (citation omitted).

MSC argues that both defenses of causation and standing fail because the it has demonstrated "the intimate connection between Bae's misrepresentations and MSC's injuries: Bae admittedly lied to MSC about the necessary approvals having been obtained for Fadian's transfer of the Property, and assignment of the parties' obligations under the Agreement, to B&K, which thereby fraudulently induced MSC to enter into the First Amendment, which caused the injuries for which MSC seeks relief in this action." (Mot. Summ. J. at 47-48). Fadian opposes, arguing that "[a]t minimum, the facts surrounding Kim's agency are in dispute and summary judgment should be denied" and that "MSC's own management caused Bae to carry out the transfer after getting signatures from a majority of shareholders." (Opp'n at 16; 17).

Here, the Court finds that the basis for Fadian's causation argument, as set forth in its response to the interrogatories, reflects its affirmative defense of "supervening, intervening events and/or parties" because it argues that "causation may be traced back to Su Heon Kim's conduct." (Bronze Decl. Ex. J at 25). The Court adopts its earlier analysis as to Kim's conduct and a lack of any imputation to Fadian. Rather, as MSC sets forth in its Reply, "MSC's damages were caused directly by Fadian's misrepresentations (set out above) that a meeting of shareholders to approve the transfer of Fadian's assets, including the property, to B&K would be noticed and that such approval was obtained. Kim did not do that, Bae and Fadian did, as Judge Barcinas already found in the Swegler Action." (Reply at 25). Therefore, the Court finds that MSC's claims do establish causation and standing and grants summary judgment in favor of MSC on this defense.

**K. Affirmative Defense 18: Good Faith**

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 38 of 48

Fadian's eighteenth affirmative defense is that it acted in good faith. (Ans. at 4). In discovery, Fadian asserts that "[n]othing indicates that [it] acted with a willful bad faith. Bae's individual conduct is not enough to establish that Fadian acted in bad faith. Instead, Su Heon Kim acted with willful bad faith." (Bronze Decl. Ex. J at 27). Fadian argues that summary judgment in MSC's favor is inappropriate because "if any representation Bae made to MSC was erroneous it was in good faith designed to benefit MSC and only after MSC's agent caused Bae to carry out said actions." (Opp'n at 14). There is nothing in the record, however, to support Bae's alleged "good intentions" and "good faith." Fadian did not submit a declaration from Bae, for example, to support that there is a factual dispute that any representations made by Bae were after MSC's purported agent, Kim, caused him to do so. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cnty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted). *See also Barcamerica Int'l USA Trust*, 289 F.3d at 593 n. 4 ("[a]rguments of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment."). Further, the Court has already determined that Kim's actions cannot be imputed to MSC. Therefore, the Court finds that this defense cannot succeed and grants summary judgment in favor of MSC.

## L. Affirmative Defense 19: Assumption of Risk

Fadian's nineteenth affirmative defense is that MSC assumed the risk. (Ans. at 4). In discovery, Fadian described the factual and legal basis for this defense through the same statement that MSC is precluded from seeking any damages because Lee and Kim's knowledge is imputed to MSC.[12] *See* Bronze Decl. Ex. L (Second Supp. Resp. to Plt. First Set of Interrogatories at 4-

---

[12] Fadian asserts that:

> Plaintiff Mariana Stones Corporation ("MSC") had full knowledge that the real property at issue was being transferred to B&K Development, LLC. ("B&K"). The officers of MSC including Su Heon Kim as CEO of MSC, and Paul Lee were negligent and careless that they did not conduct their due diligence when the real property was being transferred to B&K. In addition, MSC completely ignored prior advice and warnings that all Fadian shareholders' approval was required before any transfer to B&K would be valid. MSC's officers negligence and/or carelessness, and ignorance of prior advice, is imputed to MSC, and therefore MSC is precluded from seeking any damages against Defendant Fadian Development, Inc.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 39 of 48

5). MSC argues that "[t]his defense is no longer a valid defense in Guam as Guam has adopted the doctrine of comparative negligence and that defense is merged into the comparative fault scheme" citing 18 G.C.A. § 90108. (Mot. Summ. J. at 48). Fadian combines its response to Assumption of Risk with its response to affirmative defense 20 – consent, setting forth that "[a]s Guam law does follow comparative negligence, MSC's [sic] is also negligent via its agent Kim." (Opp'n at 17).

"Assumption of risk is the voluntary and knowing exposure of oneself to obvious dangers incident to certain activities." 6 Witkin, Summary 11th Torts § 1438(a) (2023). Assumption of risk "completely bars a plaintiff's recovery where a court finds as a matter of public policy that the defendant lacked a duty to protect the plaintiff from a particular risk of harm." *Taylor v. United States*, 350 F.App'x 129, 131 (9th Cir. 2009) (citation omitted). "The doctrine of assumption of risk is based on the theory that there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, requires knowledge and appreciation of the risk." *Hayes v. Richfield Oil Corp.*, 240 P.2d 580, 585 (Cal. 1952) (citations omitted).

"[T]he assumption of risk doctrine long has caused confusion both in definition and application, because the phrase "assumption of risk" traditionally has been used in a number of very different factual settings involving analytically distinct legal concepts." *Knight v. Jewett*, 834 P.2d 696, 699 (Cal. 1992) (citations omitted). "With the adoption of comparative fault, however, it became essential to differentiate between the distinct categories of cases that traditionally had been lumped together under the rubric of assumption of risk." *Id.* at 700. "[T]he category of assumption of risk cases that is not merged into the comparative negligence system and in which the plaintiff's recovery continues to be completely barred involves those cases in which the defendant's conduct did not breach a legal duty of care to the plaintiff." *Id.* at 703.

Here, the factual and legal basis for Fadian's assumption of risk defense appears to contemplate that MSC's officers could or should have discovered the danger by the exercise of ordinary care, that is, by doing their due diligence, could have determined that shareholder

(Bronze Decl. Ex. L at 4-5).

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 40 of 48

approval was required and was not properly obtained. Thus, the defense is not assumption of risk but contributory negligence. *See Knight,* 834 P.2d at 702-03; *see also Hayes,* 240 P.2d at 585 ("Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of risk; but where it merely appears that a person could or should have discovered the danger by the exercise of ordinary care, the defense is not assumption of risk but contributory negligence"). Fadian, however, did not assert the affirmative defense of comparative or contributory negligence[13] in this matter in its Answer. It is therefore waived. *See Palmer,* 2021 Guam 5 ¶ 16 (waiver of affirmative defenses by failure to plead); *see also,* Guam R. Civ. P. 8(c) (a party must set forth affirmatively affirmative defenses in pleading to a preceding pleading). Further, even if Fadian had plead such in its Answer, negligence is not a defense to deceit or fraud, and is therefore inapplicable to the claims of intentional misrepresentation and fraud in the inducement. *See Seeger,* 115 P.2d 977 ("Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the representation was intentional rather than negligent."); *Van Meter v. Bent Const. Co.,* 297 P.2d 644, 648 (Cal. 1956) ("A defendant who misrepresents the facts and induces the plaintiff to rely on his statements should not be heard in an equitable action to assert that the reliance was negligent unless plaintiffs conduct, in the light of his intelligence and information, is preposterous or irrational."). As to the claim of negligent misrepresentation, the Court finds that this defense is more appropriately considered as part of the element of justifiable reliance. *See, e.g., Zikovic,* 302 F.3d at 1088. Therefore, the Court grants summary judgment in favor of MSC as to this defense.

---

[13]  Section 90108 provides:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed under the law on Compensatory Relief shall be diminished in proportion to the amount of negligence attributable to the person recovering.

18 G.C.A. § 90108.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 41 of 48

**M. Affirmative Defense 20: Consent**

Fadian's twentieth affirmative defense is that MSC consented to assignment. (Ans. at 4). In discovery, Fadian sets forth that "MSC consented to the assignment because its CEO Su Heon Kim was acting on behalf of B&K and MSC." (Bronze Decl. Ex. L at 8-9).

"Consent is generally a complete defense to tort liability." 6 Witkin, Summary 11th Torts § 50(a) (2023). MSC sets forth that "[t]here is simply no evidence to support Fadian's statement that Kim was actually acting on behalf of *both* B&K and MSC, when MSC received no benefit from the assignment." (Mot. Summ. J. at 50). (emphasis in original). Fadian argues that "Bae and Kim played nearly equal roles in the endeavor with Kim being more responsible than Bae as he concocted the plan. . . . Lee, Kim and Bae all signed the assignment after Bae told Kim the Swegler heirs were missing and after Kim told Lee about the B&K opportunity after the merger failed." (Opp'n at 17-18).

As indicated earlier, Fadian has not presented any evidence showing that Kim "concocted the plan" that set forward the events in motion for this matter. Further, the First Amendment was signed on behalf of MSC by Paul, not Kim. Kim signed on behalf of B&K. At the time of the execution of the First Amendment, MSC had no interest in B&K. Kim testified that he did not talk to I Chul Lee about the fact that the property was going to be transferred to B&K. (Bronze Decl. Ex. N (Kim Depo. Testimony 114: 20-25; 115: 16 - 116:17, Nov. 17, 2017)). I Cheol Lee also set forth that "MSC performed its contract just as it did when Fadian held the contract and MSC has never received any benefit from the rogue dealings between Bae, Kim and B&K other than what the terms of the Agreement called for in its performance." (I Cheol Lee Decl. at ¶ 18). The Court finds no reason to deviate from its earlier finding that Kim was not acting on behalf of both B&K *and* MSC and will not impute his actions to MSC. Therefore, the Court finds that this defense cannot succeed and grants summary judgment in favor of MSC.

**N. Affirmative Defense 23 & 24: Satisfaction and Accord**

Fadian's twenty-third affirmative defense is satisfaction and twenty-fourth affirmative defense is accord. (Ans. at 4). In discovery, Fadian's response to MSC's interrogatories regarding the defenses of satisfaction and accord was:

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 42 of 48

Despite not having a grading permit or quarry permit, the Plaintiff continued to grade the property including quarrying the property. Therefore, any monies that purportedly claims it has lost has been satisfied by the Plaintiff selling rocks and gravel.

(Bronze Decl. Ex. L at 11 & 13).

"Accord and satisfaction is an agreement between parties to settle a bona fide contract dispute in which one party waives the right to sue in exchange for consideration less than the total amount owed under the contract." *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 23 (citations omitted). "An accord and satisfaction consists of three elements: (1) a bona fide dispute; (2) an agreement to settle that dispute (accord); and (3) execution of that agreement (satisfaction)." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 712 (9th Cir. 1990) (citation omitted). "The key element of accord and satisfaction is the intention of the parties, which as a rule presents a question of fact. The trier of fact must determine whether there was a meeting of minds as to the subject matter of the new agreement and an intention to reach a genuine compromise." *Id.* (internal citations omitted).

Here, MSC sets forth that Fadian's discovery "responses appear to encompass some theory that MSC did not suffer any damages from Fadian's tortious conduct. . . . But that is not an accord and satisfaction; if it is any affirmative defense, it might be something more along the lines of 'payment.'" (Mot. Summ. J. at 52). The Court agrees and does not find there is any factual basis to support the affirmative defense. Therefore, the Court finds summary judgment should be granted in favor of MSC as to these defenses.

**O. Affirmative Defense 25: Business Judgment Rule**

Fadian's twenty-fifth affirmative defense is the Business Judgment Rule. (Ans. at 4). In discovery Fadian asserts that "[a]s the President of Fadian Development, Inc., the President and its officers considered entering into the Agreements with MSC with best interest of the corporation, since the corporation will not incur any costs, and the grading would be born by MSC, and along with receiving royalties from MSC." (Bronze Decl. Ex. L at 15).

"Under the business judgment rule, a director cannot be held liable for actions taken in good faith which he or she believes, based on a reasonable investigation, to be in the best interests

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 43 of 48

of the corporation." *Finley v. Superior Ct.*, 96 Cal. Rptr. 2d 128, 132 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Jun. 22, 2000). "This duty—generally to act with honesty, loyalty, and good faith—derived from the common law." *Berg & Berg Enterprises, LLC v. Boyle*, 100 Cal. Rptr. 3d 875, 890 (Cal. Ct. App. 2009).

> [T]he common law rule has two components – one which immunizes directors from personal liability if they act in accordance with the requirements, and another which insulates from court intervention those management decisions which are made by directors in good faith in what the directors believe is the organization's best interest. Only the first component is embodied in Corporations Code section 309. The broader rule is a judicial policy of deference to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions.

*Id.* at 1045 (internal citations and quotation marks omitted).[14] "The business judgment rule is premised on the notion that management of the corporation is best left to those to whom it has been entrusted, not to the courts. The rule requires judicial deference to the business judgment of corporate directors so long as there is no fraud or breach of trust, and no conflict of interest exists." *Desaigoudar v. Meyercord*, 133 Cal.Rptr.2d 408, 415 (Cal. Ct. App. 2003) (internal citations omitted).

"An exception to the presumption afforded by the business judgment rule accordingly exists in circumstances which inherently raise an inference of conflict of interest and the rule does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest." *Berg*, 100 Cal. Rptr. 3d at 897 (citations omitted). "In most cases, the presumption created by the business judgment rule can be rebutted only by affirmative allegations of facts which, if proven, would establish fraud, bad faith, overreaching or an unreasonable failure to investigate material facts." *Id.* at 898 (internal quotation marks and citation omitted).

In this case, Fadian's President Sandra Pablo did not execute either the original Agreement in 2015 or the First Amendment in March 2016. It is undisputed that the agreements were executed by Bae as Chairman of the Board for Fadian. Although Fadian argues that "the 2014

---

[14] In California, the business judgment rule has been codified in California's Corporations Code section 309.

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 44 of 48

resolution gave Bae unilateral authority to continue making Fadian profitable," Opp'n at 19, Bae was still required to follow Fadian's Fourth Amended Articles of Incorporation and the General Corporation Law. Further, as MSC sets forth in its Motion, "[t]here is no evidence that Fadian through Bae conducted any reasonable investigation relating to the need to give notice of a meeting of shareholders to transfer the assets of Fadian." (Mot. Summ. J. at 54). Instead, Bae testified in the Swegler lawsuit that "he did not give any notice and admitted that he did not want anyone to know that Fadian had other shareholders and wanted to control the corporation by himself." *Id.* Bae's actions as set forth in this matter constitute fraud. Therefore, the Court finds that there is no legal basis to sustain this defense and summary judgment shall be entered in favor of MSC.

## P. Affirmative Defense 26: Wrong Party

Fadian's twenty-sixth affirmative defense is that MSC sued the wrong party. (Ans. at 4). In discovery, Fadian sets forth that this defense is based on the following:

> MSC consented to the assignment because its CEO Su Seon Kim was acting on behalf of B&K and MSC. Because Su Seon Kim was the driving factor in having the property assigned to B&K, MSC should be suing its own CEO for his actions.

(Bronze Decl. Ex L at 17). The Court finds that this defense is intertwined with Fadian's affirmative defenses regarding supervening or intervening cause and unclean hands. Fadian, in its Opposition to the Motion for Summary Judgment, even argues that this "defense is more akin to the unclean hands defense than it is intervening causes." (Opp'n at 19). The Court finds no reason to deviate from its earlier decisions regarding these defenses and therefore grants summary judgment in favor of MSC.

## Q. Affirmative Defense 27: Not Legally Responsible for the Harm Alleged

Fadian's twenty-seventh affirmative defense is that it is "not legally responsible for the harm alleged." (Ans. at 4). In discovery, Fadian asserts that MSC is precluded from seeking any damages from Fadian because Lee and Kim's knowledge is imputed to MSC. The Court has addressed the imputation issue above. Further, to the extent that the defense argues that it is not legally responsible because it did not cause the damages, the Court finds that this defense is

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 45 of 48

duplicative of its causation defense, which has already been addressed. In light of the Court's earlier rulings on imputation and causation, the Court finds that this affirmative defense fails and summary judgment should be entered in favor of MSC.

**R. Affirmative Defense 29: Unjust Enrichment**

Fadian's twenty-ninth affirmative defense is unjust enrichment. (Ans. at 4). In discovery, Fadian sets forth that "[d]espite not having a grading permit or quarry permit, the Plaintiff continued to grade the property including quarrying the property. Therefore, any monies that purportedly claims it has lost has been satisfied by the Plaintiff selling rocks and gravel." (Bronze Decl. Ex. L at 21). Here, MSC argues that summary judgment is appropriate because "unjust enrichment is not a defense, it is a theory to recover under quantum meruit, and there is no claim for quantum meruit filed by Fadian in this case." (Mot. Summ. J. at 57). In opposition, Fadian argues that "concepts of unjust enrichment and quantum meruit go along with failure to mitigate, accord and satisfaction. . . . Up to this point, MSC has yet to provide the Court with a sum certain of the profits it made prior to the court's stoppage of aggregate processing. Until that occurs, Fadian should be free to argue that MSC would be unjustly enriched if given additional profits in this case." (Opp'n at 19-20).

"At its core, damages awarded in *quantum meruit* are a form of restitution damages." *Unified Int. v. PacAir Properties, Inc.*, 2017 Guam 9 ¶ 57 (citation omitted). "A person is enriched if the person receives a benefit at another's expense." *Tanaguchi-Ruth & Assocs. v. MDI Guam Corp.*, 2005 Guam 7 ¶ 29 (citation omitted). The Court finds unjust enrichment is not an affirmative defense but rather a cause of action that should have been plead in a counterclaim. Therefore, the Court grants summary judgment in favor of MSC.

**S. Affirmative Defense 30: No Breach by Defendant**

Fadian's thirtieth affirmative defense is that there was no breach by Defendant. (Ans. at 4). In discovery, Fadian sets forth that "[t]he only reason why there is a restraining order on grading the property was because MSC's CEO attempted to transfer the property to B&K." (Bronze Decl. Ex. L at 23). MSC argues that this defense fails because it has not asserted a breach of contract claim against Fadian. (Mot. Summ. J. at 58). In response, Fadian argues that

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 46 of 48

"MSC fails to acknowledge that there was a signed agreement and assignment in this case that provided the parties with obligations and consideration. If Bae did not breach the agreement that would aid in the other defenses that Bae acted in good faith but sometimes even good faith actions have bad results." (Opp'n at 20).

"A breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages" resulting from the breach." *Gov't of Guam v. Kim*, 2015 Guam 15 ¶ 20 (quotation marks and citation omitted). Here, MSC has not asserted a claim for breach of contract, only claims for fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement. Accordingly, the Court finds the defense of no breach by Defendant inapplicable in this matter and grants summary judgment in favor of MSC.

## T. Affirmative Defense 33: Substantial Compliance

Fadian's thirty-third affirmative defense is that there was substantial compliance. (Ans. at 4). In discovery, Fadian sets forth that this defense is based on the following:

> As the President of Fadian Development, Inc., the President and its officers considered entering into the Agreements with MSC with best interest of the corporation, since, the corporation would not incur any costs, and the grading would be born by MSC, and along with receiving royalties from MSC.

(Bronze Decl. Ex. L at 27). In light of this explanation, this defense appears to be tied with Fadian's twenty-fifth affirmative defense of the business judgment rule. Substantial compliance, however, is a defense to a breach of contract action. *Gleason v. Woods Condominium Ass'n,* 2019 WL 1349611 *2 (citation omitted). *See also Ballou v. Basic Const. Co.,* 407 F.2d 1137, 1140 (4th Cir. 1969) (The doctrine of substantial performance "is essentially a rule of damages, allowing the breaching party to recover for benefits conferred on the other party, but reducing his recovery by any damages which his breach may have caused."). Again, MSC has not asserted a claim for breach of contract, only claims for fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement. Accordingly, the Court finds the defense of substantial compliance inapplicable in this matter and summary judgment should be granted in favor of MSC.

## U. Affirmative Defense 34: Offset

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 47 of 48

Fadian's thirty-fourth affirmative defense is offset. (Ans. at 4). In discovery, Fadian sets forth that "[d]espite not having a grading permit or quarry permit, the Plaintiff continued to grade the property including quarrying the property. Therefore, any monies that purportedly claims it has lost has been satisfied by the Plaintiff selling rocks and gravel." (Bronze Decl. Ex. L at 29). MSC argues that this defense fails because "MSC does not owe any debt to Fadian and Fadian has no counterclaim against MSC." (Mot. Summ. J. at 60). In its Opposition, Fadian indicates that "MSC's damages should also be discounted, or off-set, by their profits made from the Agreement and Assignment." (Opp'n at 15).

> Setoff or offset is a doctrine grounded in equity requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against the other. The doctrine allows entities that owe debts to each other to apply their mutual debts, thereby avoiding the absurdity of making A pay B when B owes A. Because of its application, it is generally understood as a rule of convenience.

*Waathdad v. Cyfred, Ltd.*, 2021 Guam 24 ¶ 18 (internal quotation marks and citations omitted). "In set-off, the mutual debts arise from different transactions. Therefore, setoff requires mutuality of the parties, such that debts and credits are mutual when they are due to and from same person in same capacity. If the debts between two parties are not mutual, then setoff is generally inapplicable." *Id.* at ¶ 19 (internal quotation marks, alterations, and citations omitted). In this case, as it is undisputed that MSC does not owe any debt to Fadian and Fadian has not set forth any counterclaim against MSC, the Court finds summary judgment should be granted in favor of MSC as to this defense.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART MSC's Motion for Summary Judgment.

**IT IS SO ORDERED** this ___01/25/2024___

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*MSC vs. Fadian*
Case No. CV1307-19
Decision and Order

Page 48 of 48